# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

Demetrious Lowe

    -Plaintiff

Case No.: **2021 CV 560**

**Jury Trial Demand**

Plead under 42 U.S.C. 1983 for violations of Excessive Force, Failure to Intervene and for a Pendent State Law Claim of Battery

Milwaukee Police Officer Donald Gaglione Jr., and
Milwaukee Police Officer Brandon Rutherford, and
Milwaukee Police Officer Peter Hauser, and
Milwaukee Police Officer Daniel Sutyak, and
Milwaukee Police Officer Daniel Pierce, and
Milwaukee Police Officer Bradley Nickel, and
Milwaukee Police Officer Michael Mattioli, and
Milwaukee Police Officer Robert Guetchidjian, and
Milwaukee Police Officer Andrew L. Langer

    -Defendants

## Plaintiff's First Amended Complaint

**NOW COMES,** the Plaintiff, Demetrious Lowe, by his attorneys Strouse Law Offices, and as for his Complaint against Defendants City of Milwaukee Police Officers Donald Gaglione, Brandon Rutherford, Peter Hauser, Daniel Sutyak, Daniel Pierce,

1

Bradley Nickel, Michael Mattioli, Robert Guetchidjian and Andrew L. Langer (collectively "named MPD Officers") and alleges and set out to the Court as follows.

## JURISDICTION

1. The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to the 4th and 14th Amendments of the U.S. Constitution, by 42 U.S.C. 1983.

2. The Court has supplemental jurisdiction over any other claims Plaintiff could make pursuant to 28 U.S.C. 1367, because it would form part of the same case or controversy as the federal claim(s).

## VENUE

3. Venue in this judicial district is proper, by virtue of 28 U.S.C. 1391, as the Plaintiff's action against the Defendant in Milwaukee Wisconsin, which is in the Eastern District of Wisconsin.

## PARTIES

4. That **Plaintiff Demetrious Lowe**, is, a permanent resident of the City of Milwaukee, domiciled at 7849 North 60th Street, Milwaukee, Wisconsin.

5. That **Defendant Donald Gaglione** (hereinafter "Gaglione"), at all material times hereto, on or about May 2, 2018, was in full uniform and was acting within the scope of his employment as a police officer of the City of Milwaukee Police Department, in his official and/or his individual capacity, under color of the law of the State of Wisconsin.

6. That **Defendant Brandon Rutherford** (hereinafter "Rutherford"), at all material times hereto, on or about May 2, 2018, was in full uniform and was acting within the scope of his employment as a police officer of the City of Milwaukee Police Department, in his official and/or his individual capacity, under color of the law of the State of Wisconsin.

7. That **Defendant Peter Hauser** (hereinafter "Hauser"), at all material times hereto, on or about May 2, 2018, was in full uniform and was acting within the scope of his employment as a police officer of the City of Milwaukee Police Department, in

his official and/or his individual capacity, under color of the law of the State of Wisconsin.

8. That **Defendant Daniel Sutyak** (hereinafter "Sutyak"), at all material times hereto, on or about May 2, 2018, was in full uniform and was acting within the scope of his employment as a police officer of the City of Milwaukee Police Department, in his official and/or his individual capacity, under color of the law of the State of Wisconsin.

9. That **Defendant Daniel Pierce** (hereinafter "Pierce"), at all material times hereto, on or about May 2, 2018, was in full uniform and was acting within the scope of his employment as a police officer of the City of Milwaukee Police Department, in his official and/or his individual capacity, under color of the law of the State of Wisconsin.

10. That **Defendant Bradley Nickel** (hereinafter "Nickel") at all material times hereto, on or about May 2, 2018, was in full uniform and was acting within the scope of his employment as a police officer of the City of Milwaukee Police Department, in his official and/or his individual capacity, under color of the law of the State of Wisconsin.

11. That **Defendant Michael Mattioli** (hereinafter "Mattioli") at all material times hereto, on or about May 2, 2018, was in full uniform and was acting within the scope of his employment as a police officer of the City of Milwaukee Police Department, in his official and/or his individual capacity, under color of the law of the State of Wisconsin.

12. That **Defendant Robert Guetchidjian** (hereinafter "Guetchidjian") at all material times hereto, on or about May 2, 2018, was in full uniform and was acting within the scope of his employment as a police officer of the City of Milwaukee Police Department, in his official and/or his individual capacity, under color of the law of the State of Wisconsin.

13. That **Defendant Andrew L. Langer** (hereinafter "Langer"), at all material times hereto, on or about May 2, 2018, was in full uniform and was acting within the scope of his employment as a police officer of the City of Milwaukee Police Department, in his official and/or his individual capacity, under color of the law of the State of Wisconsin.

# FACTS

14. For about one week before May 2, 2018, Plaintiff's family members noticed changes with the Plaintiff's behavior.

15. That in the days before May 2, 2018, the Plaintiff felt as though someone had "spiked" his drink or otherwise surreptitiously administered a drug, sedative or poison to his person without his consent.

16. That Plaintiff's family members and friends noticed that in the days before May 2, 2021, that Plaintiff was acting strange and not as his usual self and scheduled medical appointments for him.

17. The last thing that the Plaintiff recalls about May 2, 2021, is taking his son to a McDonald's restaurant for lunch.

18. Later, on May 2, 2018, at about 6:20 p.m. the Plaintiff experienced a full-blown psychological episode during which he lost his ability to understand his actions or behavior.

19. That on Wednesday, May 2nd, 2018, at approximately 6:20 p.m. MPD Officers **Gaglione, Rutherford**, and **Hauser** were at or near 4900 W. Fond Du Lac Avenue, in Milwaukee Wisconsin investigating a parking complaint.

20. That while MPD Officer **Gaglione** was responding to this call he observed a black male, wearing a blue shirt, yelling loudly, "I am King James" and "I am Demetrious" near the intersection of West Melvina Street and West Medford Avenue.

21. At the same time, Plaintiff's strange behavior was also witnessed by Sheila Watson who had stepped out of her home to the front entrance, for a cigarette, and then she called 911.

22. After MPD Officers **Gaglione, Rutherford**, and **Hauser** finished their parking complaint investigation they began riding eastbound.

23. That as MPD Officers **Gaglione, Rutherford**, and **Hauser** travelled eastbound, they were dispatched to respond to an entry complaint at or around 3852 North 50th Street, in Milwaukee Wisconsin.

4

24. That upon arrival at 3852 North 50th Street, where witnesses informed Officer Hauser that the Plaintiff had just kicked their door open, and he was walking northwest wearing a blue shirt.

25. That at the time of initial contact between the Plaintiff and MPD Officers **Gaglione, Rutherford**, and **Hauser**, the Plaintiff was already bleeding from his left arm.

26. The Plaintiff did not have or possess a weapon at all times material hereto.

### **The Lawful Seizure Portion of the Events**

27. That as Officers **Gaglione**, **Rutherford**, and **Hauser** reached the Plaintiff near the 5000 block of West Medford, Officer **Gaglione** approached from behind, while Officer **Rutherford** went in front of the Plaintiff to cut him off, and Officer **Hauser** approached from the street curb.

28. That the MPD Officers **Gaglione**, **Rutherford**, and **Hauser** ordered Plaintiff to stop but the Plaintiff started to move away from them.

29. Then, Officers **Gaglione**, **Rutherford**, and **Hauser** then **Rutherford** attempted to take control of the Plaintiff's right arm without success.

30. When Officer **Hauser** attempted to take control of Plaintiff's left arm, the Plaintiff turned and flailed his arms to reject that attempt to subdue him.

31. Then, the Plaintiff walked towards Officer **Hauser** with closed fists, and in reaction Officer **Hauser** deployed his O.C. spray, striking Plaintiff's face.

32. The Plaintiff responded by punching Officer **Hauser** in the face.

33. That after punching Officer **Hauser**, the Plaintiff ran northwest towards North 51st Street, and was pursued by Officer **Gaglione** and **Rutherford** who requested additional police backup.

34. That as Officer **Gaglione** pursued Plaintiff, attempted to take control of the back of the Plaintiff's shirt and further attempted to take control of Plaintiff's right arm but was unable to do so.

35. The Plaintiff continued to run, reaching at or near 3945 North 51st Street in the City of Milwaukee.

36. Officers **Gaglione, Hauser** and **Rutherford** again reengaged the Plaintiff and **Gaglione**, deployed his expandable baton and delivered multiple focused strikes to Plaintiff's lower left leg and elsewhere.

37. Plaintiff did not appear to be physically affected by the baton strikes and appeared to grow more frustrated.

38. That either Officer **Hauser** and/or **Rutherford** deployed mace against the Plaintiff it did not appear to have any effect on him.

39. As Officer **Gaglione** continued to strike the Plaintiff with multiple baton strikes the Plaintiff turned to face Officer **Gaglione** and struck him above the left eyebrow, causing him to fall to the ground.

40. That soon thereafter, the other Named MPD Officers, **Sutyak, Pierce, Nickel, Mattioli, Guetchidjian** and **Langer** arrived at the scene to provide assistance.

41. At this point all of the Named MPD Officers were physically engaged in attempting to subdue the Plaintiff in order to arrest him.

42. Also, by this time a large crowd of people gathered to observe the events, many of whom caught the events with the named officers on video.

43. That all of the named MPD Officers surrounded the Plaintiff in an attempt to subdue and arrest him.

44. That Officer **Sutyak** deployed his E.C.D. taser against the Plaintiff multiple times which allowed the other named MPD Officers to bring the Plaintiff to the ground.

45. Finally, the named MPD Officers gained control of the Plaintiff who was then subdued and no longer resisted and lay incapacitated face down on the ground, finally succumbing to the physical force used by the Named MPD Officers.

### Post Seizure - Excessive Force & Battery Portion of the Events

46. That all of the Named MPD Officers were at this point in the immediate "arm's length" vicinity of the Plaintiff, who lay stomach/face down on the ground no longer moving, or in the alternative, no longer resisting.

47. That after Plaintiff no longer moved or stopped resisting, and no longer posed a threat, one or more of the Named MPD Officers continued to intentionally and/or recklessly to kick, the Plaintiff with excessive force as he lay stomach/face down on the ground.

48. That after Plaintiff no longer moved or stopped resisting, and no longer posed a threat, one or more of the Named MPD Officers continued to intentionally and/or recklessly strike the Plaintiff with a baton using excessive force as he lay stomach/face down on the ground.

49. That after Plaintiff no longer moved or stopped resisting, and no longer posed a threat, one or more of the Named MPD Officers continued to intentionally and/or recklessly to use closed fists to punch, the Plaintiff with excessive force as he lay stomach/face down on the ground.

50. That the remaining MPD Officers who were not then and there using excessive force against the Plaintiff failed to intervene and stop the Officers who continued to use unreasonably excessive force against Plaintiff and thereby allowed for punitive action to continue against the Plaintiff after it had become reasonably obvious that the Plaintiff was no longer moving or was not resisting.

51. That other MPD Officers investigated these incidents and acquired multiple cell phone videos which were created by witnesses and logged this evidence as part of their investigation.

52. That the body cams and/or squad videos of the Named MPD Officers also captured the events complained of on 05/02/2018.

53. After he was arrested, the Plaintiff was brought to St. Joseph's Hospital where he was treated for serious physical injuries.

54. Later in Plaintiff's criminal case (Milwaukee County Criminal Case No. 2018 CF 002073) he was adjudicated, as not responsible for his actions on 05/02/2018 by reason of mental disease or defect.

55. That several of the named MPD Officers were investigated and later disciplined for their actions relating to excessive use of force.

56. That the actions of the Named MPD Officers were done intentionally and/or recklessly which violated the Plaintiff's 4th Amendment rights guaranteed by the

U.S. Constitution, *i.e.*, arrest and seizure of the Plaintiff and the right to be free from unreasonable and excessive force.

57. That the actions of the Named MPD Officers were done intentionally and/or recklessly which violated the Plaintiff's 14th Amendment rights guaranteed by the U.S. Constitution, by violating his bodily integrity.

## COUNT 1
### 4th Amendment Violation(s) - Right to be Free from Excessive Force and 14th Amendment Violation(s) Right to Bodily Integrity under by 42 U.S.C. 1983

58. That the Plaintiff adopts and realleges paragraphs 1-57 as though fully set out herein.

59. The Fourth Amendment to the United States Constitution protects persons from being subjected to unreasonably excessive force while being arrested.

60. Police officers may only use the amount of force necessary under the circumstances to make the arrest.

61. That on May 2, 2018, the Plaintiff had the constitutional right not to be subjected to excessive force after he stopped moving and/or resisting, even if the force used during the arrest was otherwise proper.

62. The Named MPD Officers intentionally or recklessly unreasonably acted with excessive physical force against the Plaintiff, after the Plaintiff stopped moving and/or stopped resisting and these Officers violated Plaintiff's Fourth Amendment right not to be subjected to excessive force and Plaintiff's Fourteenth Amendment right to bodily integrity.

63. The force used by the Named MPD Officers was objectively unreasonable and punitive after the Plaintiff stopped resisting and a reasonable police officer would not have kept using physical force after the Plaintiff was no longer moving and/or offered no continued resistance.

8

Case 2:21-cv-00560-WED   Filed 12/08/21   Page 8 of 11   Document 23

64. That the Named MPD Officers who used excessive force by kicking, using baton strikes and hitting the Plaintiff after he no longer offered resistance violated the Plaintiff's Fourth Amendment right to be free from excessive force and his 14th Amendment right to bodily integrity.

65. As a result of the Defendants' actions the Plaintiff was harmed.

## COUNT 2
## 42 U.S.C. 1983
## Failure to Intervene

66. That the Plaintiff adopts and realleges paragraphs 1- 65 as though fully set out herein.

67. Plaintiff contends that on 05/02/2018 the named MPD Officers unreasonably violated plaintiff's Fourth Amendment right to be free from unreasonably excessive force in Count 1.

68. That the named MPD Officers who on 05/02/2018 did not continue to exercise unreasonably excessive force should also be liable to the Plaintiff because they had a realistic opportunity to intervene but failed to intervene to stop their fellow police officers who continued to use force in a punitive and unreasonable way against the Plaintiff after he stopped moving and/or resisting.

69. The named MPD Officers are liable for failing to intervene as their fellow officers continued to use unreasonable and excessive force against the Plaintiff.

70. The had a duty to intervene to prevent the use of excessive force by their fellow officers and had a reasonable opportunity to intervene but failed to intervene.

71. That as a result of the Defendants' actions or inactions the plaintiff was harmed.

## COUNT 3
## Pendent State Law Claim
## Battery

72. That the Plaintiff adopts and realleges paragraphs 1- 71 as though fully set out herein.

73. That the Named MPD Police Officers who used force to subdue and arrest Plaintiff may have qualified immunity if it was reasonably necessary to use force from the perspective of a reasonable police officer similarly situated.

74. That after the Plaintiff was no longer moving and stomach/face down or in the alternative stopped resisting arrest the Named MPD Officers committed battery if:

    a. Those Named MPD Officer(s) continued to intentionally kick the Plaintiff after he was pacified, without Plaintiff's consent and which he found personally offensive.

    b. Those Named MPD Officer(s) continued to intentionally strike the Plaintiff with a baton, after he was pacified, without Plaintiff's consent and which he found personally offensive.

    c. Those Named MPD Officer(s) continued to intentionally punch the Plaintiff with a closed fist after he was pacified, without Plaintiff's consent and which he found personally offensive.

75. That as a result of the Defendants' actions, the Plaintiff was harmed.

## CONCLUSION

**WHEREFORE,** Plaintiff demands judgment as follows:

1. In favor of the Plaintiff and against the Defendants, for compensatory damages, pain, suffering, psychological and emotional damages from unreasonable use of excessive force, or the failure to intervene as set out in Counts 1 and 2.

2. In favor of the Plaintiff for punitive damages plead under Rule 9 as set out in Count 1.

3. In favor of the Plaintiff for punitive damages for 3 times the amount of Plaintiff's actual damages, or $200,000.00 as set out under Wisconsin law in Count 3.

4. For all cost, disbursements, interest and reasonable attorneys' fees pursuant to Title 42 U.S.C. Section 1988.

5. For such other relief as the Court deems just and equitable.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL OF THIS ACTION ON ALL ISSUES SO TRIABLE**

Dated this 8th day of December 2021.

Electronically signed by,

*/s/ Atty. Paul A. Strouse*
Atty. Paul A. Strouse #1017891

Strouse Law Offices
825 W. Wisconsin Avenue
Milwaukee, WI 53233
(414) 390-0820 (phone)
strouselitigation@gmail.com